UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-CV-81380-MIDDLEBROOKS/BRANNON

ASPEN SPECIALITY INSURANCE
COMPANY,
    Plaintiff,
v.

RIVER OAKS OF PALM BEACH
HOMEOWNER'S ASSOCIATION, INC.,
    Defendant.
_____/

## OMNIBUS ORDER

THIS CAUSE is before the Court upon Plaintiff Aspen Specialty Insurance Company's ("Aspen") Motion for Summary Judgment (DE 49), filed June 4, 2012, and Defendant River Oaks Homeowner's Association, Inc.'s, ("River Oaks") Motion for Partial Summary Judgment (DE 35), filed June 1, 2012.

Aspen, a surplus lines insurer, initiated this action seeking a declaratory judgment as to its right to rescind the commercial property insurance policy ("Policy") it issued to River Oaks, the insured, due to River Oaks's alleged misrepresentations made during the application and the claim investigation processes. Alternatively, if Aspen was not entitled to rescind the Policy, it seeks a declaration that River Oaks is precluded from seeking coverage under the Policy because River Oaks violated certain Policy conditions and breached its duties under the Policy.

Both Parties move for summary judgment on the following counts: (1) count one seeking a declaration that Aspen had the right to rescind the Policy pursuant to section 627.409(1) of the Florida Statutes; (2) count two seeking a declaration that Aspen had the right to rescind the Policy due to River Oaks's violation of the Policy's Concealment, Misrepresentation or Fraud provision ("Fraud Provision"), which River Oaks purportedly violated by concealing or

1

misrepresenting material facts during both the application and the claim investigation processes; and (3) count three seeking a declaration that River Oaks is barred from seeking coverage under the Policy because River Oaks breached the Policy's Notice provision ("Notice Provision").

Individually, if the Court determines Aspen did not have the right to rescind the Policy and River Oaks's claim is covered under the Policy, Aspen moves the Court to determine (1) that it is not required to replace all the windows, sliding glass doors, and roofs of the forty-nine buildings ("Property"),[1] and (2) that River Oaks can only claim limited damages. Turning to River Oaks's individual arguments, River Oaks moves for summary judgment on both counts four and ten of Aspen's Complaint, in which Aspen seeks a declaration that River Oaks is barred from seeking coverage under the Policy because River Oaks breached the Policy's Post-Loss Conditions provision ("Post-Loss Provision") and breached the Policy's Legal Action provision ("Legal Action Provision"), respectively. In its Response to River Oaks's Motion for Partial Summary Judgment, Aspen agreed to dismiss count ten, accordingly, River Oaks is entitled to judgment as a matter of law on count ten of Aspen's Complaint.

**I. Background**

On December 12, 2011, Aspen, a surplus lines insurer, initiated this declaratory action against River Oaks, its insured, seeking a declaration that it had the right to rescind the Policy it issued to River Oaks, or, if it did not have the right to rescind the Policy, that River Oaks was barred from seeking coverage under the Policy.

In February of 2005, River Oaks applied for a commercial property insurance policy with Aspen. (*See* DE 35- Attachment 4). In its application, River Oaks represented the following: (1) that in the last five years, it had not filed any claims; and (2) in the last five years, no events

---

[1] The Property is composed of forty-eight buildings and a clubhouse. (Cronin Dep. 32:22-25).

occurred "that may give rise to [future] claims" (Complaint at ¶¶ 38-39; *see also* DE 35-Attachment 4 at 1-2). However, Morton Leslie, the individual who ran Aspen's Bathroom Renovation Committee, stated that she "believe[d]" the clubhouse was damaged in 2004 during Hurricanes Frances and Jeanne. (Leslie Dep. 33-34:25-16). To fix the damage, it cost River Oaks between $60,000 and $80,000. (Leslie Dep. 35:19-23). Additionally, on October 5, 2004, River Oaks's Board of Directors agreed to apply for a loan with the Federal Emergency Management Agency ("FEMA") to cover clean-up costs from Hurricanes Frances and Jeanne. (Linksman Dep. 140-141:25-8). Finally, in January through September of 2005, four different clusters of buildings in the Property were infested with termites, and, the unit owners were assessed to pay for the termite damage. (Thomas Dep. at 46-49:13-15).

Based upon the representations set forth in the application, Aspen issued the Policy to River Oaks, which covered the forty-nine buildings located at 23317 S.W. 58th Avenue, Boca Raton, Florida ("Property"), from March 1, 2005 through March 1, 2006. (*See* DE 35-Attachment 9). While the Policy was in effect, winds caused by Hurricane Wilma damaged the Property. On October 28, 2005, River Oaks filed a notice of loss with Aspen stating that it was making a claim for benefits under the Policy to cover the damage sustained during Hurricane Wilma. (Anniello Dep. 38:10-16). Aspen hired Custard Independent Adjusters ("Custard") to investigate the damage, and, after Custard inspected the damage, it determined that it would cost Aspen approximately $38,000.00 to repair the damage. (Anniello Dep. 39-40:7-14). Aspen notified River Oaks of its determination and stated that the amount of the damage did not exceed the Policy's deductible. (Anniello Dep. 39:17-18). River Oaks withdrew its claim and the matter was closed.

3

In July of 2008, River Oaks notified Aspen that it wanted Aspen to re-open its Hurricane Wilma claim. (Anniello Dep. 66:17-24). However, in September of 2008, a representative of River Oaks stated that River Oaks's "roofer had assessed the wind damages and that the amount to do the repairs and/or replacement still fell below" River Oaks's deductible. (Anniello Dep. 71:7-19). Two years later, River Oaks hired United States Adjusters ("US") to inspect the Property. (*See* DE 51- Attachment 3).

In August of 2010, US submitted an estimate of loss to Aspen stating that Hurricane Wilma caused over $7.5 million in damages. (Anniello Dep. 73:12-18). Later, US submitted a revised estimate of loss claiming that Hurricane Wilma caused over $13.5 million in damages. (Velez Dep. 125-126: 20-9). On December 22, 2011, Aspen sent River Oaks a letter informing River Oaks that it rescinded the Policy because River Oaks falsely represented in its application that no claim or occurrence took place that may give rise to a claim for the prior five years and refunded River Oaks $201,229.16, the Policy's purchase price. (DE 35-Attachment 1 at ¶ 63). Additionally, Aspen filed the instant declaratory action.

**II. Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), a district court's decision to grant summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is genuine where the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993)). A district court's central inquiry when determining whether it should

grant a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). After the parties have had adequate time to conduct discovery and a party files a motion for summary judgment, a district court must grant summary judgment against a party who fails to establish the existence of an element essential to his case that he bears the burden of proof on during trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

### III. Discussion

#### 1. Count One

In count one, Aspen seeks a declaration that it was entitled to rescind the Policy. Specifically, Aspen contends the Policy was void *ab initio* because River Oaks's application contained a material misrepresentation of fact. Aspen relies upon section 627.409(1) of the Florida Statutes to support its argument; however, this reliance is misplaced. As River Oaks points out in its Response, Aspen is a surplus lines carrier (Complaint at ¶ 1); accordingly, section 627.409(1) is inapplicable because the proper statutory basis for determining whether rescission is proper is Florida's Surplus Lines Law, Fla. Stat. §§ 626.913-.937. Florida's Surplus Lines Law regulates surplus lines insurers, like Aspen, in Florida, *see* Fla. Stat. § 626.913(1), and, it provides that "[e]xcept as may be specifically stated to apply to surplus lines insurers, the provisions of chapter 627 do not apply to surplus lines insurance authorized under . . . the Surplus Lines Law." *See* Fla. Stat. § 626.913(4). Section 627.409(1), the section Aspen relies upon, does not specifically state it applies to surplus lines insurers. In its Response to River Oaks's Motion for Partial Summary Judgment, Aspen concedes that section 627.409(1) is

5

inapplicable and agrees that "the terms of the . . . Policy's Concealment, Misrepresentation or Fraud provision establish the standard for rescission in this case." (*See* DE 90 at 2). Accordingly, River Oaks is entitled to judgment as a matter of law on count one of Aspen's Complaint.

*2. Count Two*

In count two, Aspen seeks a declaration that River Oaks is barred from recovering its loss under the Policy because it was obligated to comply with the Fraud Provision, which is a condition of the Policy. The Fraud Provision provides in pertinent part that the Policy is "void in any case of fraud by you[, River Oaks,] as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning: 1. This Coverage Part; 2. The Covered Property; 3. Your interest in the Covered Property; or 4. A claim under this Coverage Part." (DE 35- Attachment 9 at 7). After considering the Fraud Provision, I conclude that in order for River Oaks to recover under the Policy it was obligated to comply with the Fraud Provision. *See, e.g., Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 922 (11th Cir. 1998).

Aspen argues that River Oaks violated this condition (1) during the application process by concealing or misrepresenting the damage the Buildings sustained during Hurricanes Frances and Jeanne (Complaint at ¶ 51) and (2) after Hurricane Wilma, by "intentionally concealing or misrepresenting material facts and circumstances known to them relating to the nature and amount of the claim as well as other circumstances surrounding the claim investigation" (Complaint at ¶ 47). River Oaks contends it is entitled to summary judgment in its favor on count two because (1) Aspen failed to plead that River Oaks misrepresented information during either the application or investigation process with the intent to injure, defraud or deceive Aspen, and (2) none of the alleged misrepresentations cited by Aspen are material.

6

In Florida, once the insured establishes a loss apparently within the terms of an insurance policy, the burden shifts to the insurer to prove that the claim is excluded from coverage under an applicable exception or exclusion. *See Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 925 (11th Cir. 1998) (citing *Hudson v. Prudential Property & Cas. Ins. Co.*, 450 So. 2d 565, 568 (Fla. 2d DCA 1984)). When interpreting an insurance policy, a court should give full meaning and effect to each provision and construe each provision according to its plain meaning. *Travelers Indem. Co. v. PCR, Inc.*, 326 F.3d 1190, 1193 (11th Cir. 2003) (citing *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1186 (11th Cir. 2002)). If the policy's language "is susceptible to more than one reasonable interpretation, one providing coverage and the [ ] other limiting coverage, the insurance policy is considered ambiguous." *Travelers Indem. Co. v. PCR, Inc.*, 326 F.3d 1190, 1193 (11th Cir. 2003) (citing *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1186 (11th Cir. 2002)). Keeping this framework in mind, I will consider whether either Party is entitled to judgment as a matter of law on count two.

A. Application Process

During the application process, Aspen contends that River Oaks's representative made a materially misleading representation when he failed to identify any "claims or occurrences that may give rise to claims for the prior 5 years". (DE 49 at 3; *see* DE 1- Attachment 2 at 2). Specifically, Aspen states that the undisputed facts show that several occurrences took place in 2004, the year prior to the time River Oaks submitted its application, that may have given rise to claims. First, Aspen contends it is undisputed that the Property sustained damage during Hurricanes Frances and Jeanne (*see* DE 49 at 3-4), which is evidenced by River Oaks's representatives statements conceding that the clubhouse was damaged during these hurricanes and by River Oaks's Board of Directors voting to apply for a FEMA loan to cover the property

7

damage. (*See* DE 49 at 4). Second, Aspen provides River Oaks failed to include in its application the fact that termites had infested and damaged at least four buildings within the Property. (*See* DE 49 at 4-5).

Even if all these allegations are true, River Oaks argues that the Court is precluded from entering summary judgment in Aspen's favor because Aspen failed to allege in its Complaint that River Oaks made intentional misrepresentations on the application. (*See* DE 35 at 5-6). Turning to the Complaint, Aspen's sole allegation concerning River Oaks's purported misrepresentations during the application process is that River Oaks's "representatives concealed and/or misrepresented information regarding the damage to the . . . Buildings caused by Hurricane[s] Frances and . . . Jeanne." (Complaint at ¶ 51).

In order for River Oaks's conduct to violate the condition set forth in the Fraud Provision, River Oaks's concealment or misrepresentation must have been intentional, and, the aforementioned allegation does not establish whether River Oaks acted intentionally. Aspen failed to address this argument in its Response to River Oaks's Motion for Partial Summary Judgment. However, it appears Aspen may have misconstrued River Oaks's argument because in its Response, Aspen states "[a]dditionally, despite R[iver] O[aks's] contentions, A[spen] . . . is not required to present direct evidence of R[iver] O[aks's] representatives' intent to defraud." (DE 90 at 3). This argument fails to address River Oaks's actual argument that River Oaks, and not Aspen, is entitled to judgment as a matter of law in part on count two because Aspen's second count failed to contain any allegation establishing that River Oaks's representatives acted with the requisite intent during the application process. Accordingly, River Oaks is entitled to judgment as a matter of law in part on the portion of count two arising from River Oaks's purported misrepresentations or omissions made during the application process because it is

undisputed that Aspen did not allege River Oaks acted with the requisite intent to violate the Fraud Provision.

### B. Claim Investigation

Turning to the claim investigation process, Aspen argues River Oaks violated the Fraud Provision by intentionally concealing or misrepresenting material facts and circumstances regarding the claim investigation. (*See* DE 49 at 12-13). Aspen sufficiently alleged that River Oaks acted with the requisite intent to violate the Fraud Provision during the claim investigation process. (Complaint at ¶ 47). Aspen asserts that River Oaks's violation of the Provision is clear because River Oaks waited five years after Hurricane Wilma struck and Aspen determined the damage sustained by certain buildings did not exceed the deductible to file a claim seeking coverage under the Policy for over $13.5 million to cover the cost of replacing "every roof, every window and every sliding glass door in all of the 49 buildings at the . . . Property." (*See* DE 49 at 13). Aspen asserts River Oaks's claim is grossly exaggerated, and, in support of its argument, Aspen offers the deposition testimony of several unit owners who testified that they did not have any issues at all-- let alone recurring issues-- with their roofs, windows, or sliding glass doors. (*See* DE 49 at 13-14, *see, e.g.,* Canessa Dep. 36:12-25; 27:1-25; 11:1-25; 45:20-23). Aspen points out that even River Oaks's own experts represent that not every roof, window, and sliding glass door was damaged during Hurricane Wilma. (*See* DE 49 at 14).

In response, River Oaks contends summary judgment is improper because a genuine issue of material fact exists concerning whether River Oaks intentionally misrepresented the amount of its claim. (*See* DE 92 at 14). River Oaks argues its request to replace all the roofs, windows, or sliding glass doors, is not fraudulent because it is disputed whether Aspen has a duty to match all the roofs, windows, and sliding glass doors in all the buildings. Essentially, if

9

Aspen has a duty to match under the Policy, it must replace each roof, window, and sliding glass door, even if it is not damaged, so, the Property will be uniform once the repairs are completed. Additionally, River Oaks represents that its experts filed two estimates with Aspen, one that estimated the cost to repair all the roofs, windows, and sliding glass doors, and, one that estimated the cost of repairing only the damaged roofs, windows, and sliding glass doors. (*See* DE 92 at 15). After considering the record, I find a genuine issue of material fact exists as to whether River Oaks intentionally concealed or misrepresented facts during the claim investigation process. Accordingly, I find neither Party is entitled to judgment as a matter of law in part on count two.

### 3. Count Three

Both Parties contend they are entitled to summary judgment in their favor on Aspen's third count seeking a declaration that River Oaks is barred from seeking coverage under the Policy because River Oaks breached its duty to both "prompt[ly]" provide Aspen "notice of the loss or damage" and describe "the property involved." (Complaint at ¶ 54). Aspen argues it is entitled to judgment as a matter of law on count three because it is undisputed that River Oaks failed to provide timely notice of the loss because River Oaks filed its claim five years after Hurricane Wilma struck. (*See* DE 49 at 7). River Oaks contends that it is entitled to judgment as a matter of law on count three because it provided Aspen notice of the loss shortly after Hurricane Wilma struck.

After considering the record, I find neither Party is entitled to judgment in its favor on count three. In order to discharge its duty under the Notice Provision, River Oaks had to (1) promptly provide Aspen notice of the loss or damage and (2) describe the property that was lost or damaged. A genuine issue of material fact exists as to whether River Oaks's notice was

prompt and sufficient. For example, a genuine issue exists as to whether River Oaks sufficiently identified which of the forty-nine buildings were damaged during Hurricane Wilma. This holding is in line with Florida law because a determination whether an insured complied with a notice provision is a question of fact. *See Ideal Mut. Ins. Co. v. Waldrep*, 400 So. 2d 782, 785 (Fla. 3d DCA 1981). Accordingly, the duty to determine whether River Oaks satisfied its obligation under the Policy is reserved for the fact finder.

*4. Count Four*

River Oaks moves the Court to enter summary judgment in its favor on Aspen's fourth count, in which it seeks a declaration that River Oaks is barred from coverage under the Policy for violating the Policy's Post-Loss Provision. As a condition to recover under the Policy, River Oaks agreed to do the following: (1) "[g]ive us prompt notice of the loss or damage", including, "a description of the property involved"; (2) "[a]s soon as possible, give us a description of how, when and where the loss or damage occurred"; (3) "[a]t our request, give us complete inventories of the damaged and undamaged property" including, "quantities, costs, values and amount of loss claimed"; (4) "[a]s often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records"; and (5) "[c]ooperate with us in the investigation or settlement of the claim." (Complaint at ¶ 60).

In Florida, "[a] total failure to comply with policy provisions . . . may constitute a breach precluding recovery from the insurer as a matter of law. If, however, the insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by a jury." *Haiman v. Federal Ins. Co.*, 798 So. 2d 811, 812 (Fla. 4th DCA 2001) (citations omitted). Here, it is undisputed that River Oaks did not totally fail to comply with the Post-Loss Provision, accordingly, it would be improper to enter judgment as a matter of law in

11

River Oaks's favor on this count. In this case, a genuine issue of material fact exists with respect to whether River Oaks violated its duty to (1) provide prompt and sufficient notice, (2) provide inventories of the damaged and undamaged property, (3) permit Aspen to inspect the Property to determine the amount of loss or damage, and (4) cooperate during the claim investigation process.

### 5. Matching and Replacement Costs

Aspen moves the Court to determine that the Policy does not require Aspen to "match" the damages. While River Oaks did not raise this argument in opposition to Aspen's request, I am precluded from entering judgment on Aspen's behalf on this issue because Aspen did not seek a declaration that it was not required to "match" the windows, sliding glass doors, or roofs, in its Complaint.

Accordingly, it is hereby,

**ORDERED AND ADJUDGED** that:

1. Aspen's Motion for Summary Judgment (DE 49) is **DENIED**; and

2. River Oaks's Motion for Partial Summary Judgment (DE 35) is **GRANTED IN PART AND DENIED IN PART.**

It is further,

**ORDERED AND ADJUDGED** that:

1. The Clerk of Court is directed to enter **JUDGMENT** in favor of River Oaks and against Aspen on count one, count two in part, and count ten of the Complaint; and

2. Count two in part, count three, and count four shall PROCEED to trial.

**DONE AND ORDERED** at Chambers in West Palm Beach, Florida, this 7 day of August, 2012.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:    Counsel of Record